IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEPUY SYNTHES PRODUCTS, INC.,

    Plaintiff,

v.

GLOBUS MEDICAL, INC.,

    Defendant.

Civil Action No. 14-11-RGA

## MEMORANDUM OPINION

John W. Shaw, Esq., Karen E. Keller, Esq., David M. Fry, Esq., SHAW KELLER LLP, Wilmington, DE; Matthew J. Becker, Esq. (argued), Edward M. Mathias, Esq. (argued), Tara R. Rahemba, Esq., AXINN, VELTROP & HARKRIDER LLP, Hartford, CT; Aaron J. Feigenbaum, Esq., AXINN, VELTROP & HARKRIDER LLP, New York, NY.

    Attorneys for Plaintiff.

John C. Phillips, Jr., Esq., Megan C. Haney, Esq., PHILLIPS, GOLDMAN & SPENCE, P.A., Wilmington, DE; Vivian S. Kuo, Esq. (argued), Robert F. Ruyak, Esq., Michael Woods, Esq. (argued), WINSTON & STRAWN LLP, Washington, DC; Luke A. Culpepper, Esq., Matthew D. Tanner, Esq., WINSTON & STRAWN LLP, Houston, TX.

    Attorneys for Defendant.

May 28, 2015

*/s/ Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before the Court is the issue of claim construction for the disputed terms found in U.S. Patent No. 8,623,057 ("the '057 patent").

## I. BACKGROUND

Plaintiff DePuy Synthes Products, Inc. ("Synthes") brought the present action for patent infringement of the '057 patent against Defendant Globus Medical, Inc. ("Globus") on January 7, 2014. (D.I. 1). Claim 1 of the '057 patent is representative of the asserted claims:

> A flexible, elongated connection unit for stabilizing a human spine where the flexible connection unit is configured to be surgically implanted into the human body adjacent the spine and held in place by at least a first and a second pedicle screw assembly that are configured to be anchored into a first and second, adjacent vertebra, respectively, the flexible, elongated connection unit comprising:
> (a) a first, metallic rigid portion having an outer surface configured to be secured within the first pedicle screw assembly, the outer surface of the first rigid portion having a dimension;
> (b) a second, metallic rigid portion;
> (c) a cylindrical flexible member directly secured to the first rigid portion and to the second rigid portion, the flexible member having an outer surface having a diameter less than the dimension of the outer surface of the first rigid portion at a position between the first and second rigid portions;
> (d) a longitudinally compressible spacer comprising:
> (1) a metallic, rigid portion having a length and having an inner bore extending the length of the spacer metallic portion, the flexible member extending through the bore of the spacer metallic portion, the inner bore of the spacer metallic portion having a larger dimension than the diameter of the outer surface of the flexible member along the length of the spacer metallic portion bore such that the spacer metallic portion can slide along the outer surface of the flexible member, and where the spacer metallic portion has an outer surface configured to be secured within the second pedicle screw assembly, the spacer metallic portion being located entirely between the first rigid portion and the second rigid portion such that along the length of the connection unit no portion of the spacer metallic portion overlaps with any portion of the first or second rigid portion;
> (2) a first elastomeric portion located at least partially between the first rigid portion and the spacer metallic portion, the

2

>           first elastomeric portion having a length and having an inner bore extending the length of the first elastomeric portion with the flexible member extending through the bore of the first elastomeric portion;
>           (3) a second elastomeric portion located at least partially between the second rigid portion and the spacer metallic portion, the second elastomeric portion having a length and having an inner bore extending the length of the second elastomeric portion with the flexible member extending through the bore of the second elastomeric portion;
>           whereby the first and second elastomeric spacer portions limit the sliding of the spacer metallic portion along the flexible member.

(D.I. 1-1 at 36:49–37:35). The effective filing date of the '057 patent is September 24, 2003, and thus all terms will be construed as of that date. (*Id.* at 51, 1:14–16). The Court has considered the parties' joint claim construction brief (D.I. 52), joint appendix (D.I. 53), and held oral argument on May 14, 2015. (D.I. 66).

## II.  LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citations omitted).

3

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (internal quotation marks and citations omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks and citations omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would

exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## III. AGREED-UPON CONSTRUCTIONS

1. "elastomeric"

    a. *Agreed-upon construction*: Polymer having elastic qualities.

2. "dimension"

    a. *Agreed-upon construction*: A measurable feature.

## IV. CONSTRUCTION OF DISPUTED TERMS

1. "flexible member"

    a. *Plaintiff's proposed construction*: A structure that is capable of bending.

    b. *Defendant's proposed construction*: A semi-rigid element for connecting end portions having a structure, length, and diameter that affects the flexibility of the connection unit.

    c. *Court's construction*: A structure that is capable of bending.

Globus's proposed construction imports limitations from the specification, and does not reflect the plain meaning of the term "flexible member." Globus concedes that the limitation requiring "a semi-rigid element" derives from examples in the specification that teach that the "flexible member" can be "a solid member of rigid material" or "a wire, plurality of wires, braided cable or other structure for connecting end portions." (D.I. 1-1 at 29:17–18 & 22–24). The fact that the "flexible member" may be "a solid member of rigid material" argues against Globus's proposed limitation requiring it to be "a semi-rigid element." Globus also relies on a sentence from the specification stating: "It will be clear to one skilled in the art that the structure, length and diameter of the connecting member will affect the flexibility of the connection unit

5

284." (*Id.* at 65, 29:24–26). This language states what appears to be a scientific principle. It does not appear to limit the scope of "flexible member."

Synthes argues that the specification differentiates between the terms "semi-rigid" and "flexible." (D.I. 52 at 27). For example, the specification states that "[t]he first end portion 301 can also be rigid, semi-rigid or flexible." (D.I. 1-1 at 31:27–28). This language strongly suggests that the patentees intended "semi-rigid" and "flexible" to have different meanings. I agree with Synthes that Globus's limitation "for connecting end portions" would render claim language superfluous because "[e]ach independent claim already requires the flexible member to be 'directly secured to' (claim 1), 'connected with' (claim 13) or 'connected to' (claims 23, 33, 46) the end portions." (D.I. 52 at 29–30). Synthes also points out that "[w]hen the inventors intended to narrow the breadth of the term 'flexible member' by imposing additional limitations, they did so explicitly, as in claim 12, which adds the limitation that the 'flexible member is metallic.'" (*Id.* at 15). Synthes relies on the 1996 edition of *Merriam-Webster's Collegiate Dictionary*, which defines "flexible" as "capable of being flexed" and "flex" as "bend." (D.I. 53-4 at 7). Synthes's proposed construction better captures the plain meaning of the term "flexible member," and thus I adopt this construction.

    2.    "secured within"

        a.    *Plaintiff's proposed construction*: Held at least partly inside.

        b.    *Defendant's proposed construction*: Held entirely inside.

        c.    *Court's construction*: Held at least partly inside.

The only dispute between the parties is whether "within" means "at least partly inside" or "entirely inside." (D.I. 52 at 36). Synthes argues that Globus's proposed construction cannot be correct because the inventors used the word "entirely" in other portions of the claims, and did not

do so for "secured within." (*Id.* at 36–37). Synthes points to claim 1, which recites: "the spacer metallic portion has an outer surface configured to be secured within the second pedicle screw assembly, the spacer metallic portion being located entirely between the first rigid portion and the second rigid portion." (D.I. 1-1 at 37:12–14). Synthes also highlights Figure 53, which depicts the "end portion" (285), or the "first, metallic rigid portion" in claim 1, as partially outside the screw assembly. (*Id.* at 42 fig.53 & 64, 28:37–41).

It is important to consider the context. The claim term is "secured within," not "within." The part of the metallic portions that is going to be secured is required to be within, not the entire metallic portions. Thus, in light of the claim language and the specification, a person of ordinary skill in the art would interpret the term "secured within" to mean "held at least partly inside." Therefore, I adopt Synthes's proposed construction.

    3.    "a longitudinally compressible spacer"

        a.    *Plaintiff's proposed construction*: A spacer having at least one component that is capable of being made more compact along its length.

        b.    *Defendant's proposed construction*: A component capable of being made more compact along its length.

        c.    *Court's construction*: A spacer capable of being made more compact along its length.

The parties agree that "longitudinally compressible" means "capable of being made more compact along its length." The parties disagree, however, about whether "a spacer having at least one component" or "a component" is "longitudinally compressible." During oral argument, Synthes stated that there were two issues in dispute: (1) "whether the spacer can be made of multiple components"; and (2) "whether it's sufficient that at least one individual part of the

7

spacer is capable of compressing." (D.I. 66 at 100:15–24). Only the second issue appears to be in dispute because Globus agreed that the spacer can have "subcomponents," but argued that the spacer must be "longitudinally compressible" as a whole. (*Id.* at 127:7–21). Synthes argues that the spacer does not have to be a "single fused structure" (*id.* at 102:2–5), and that the spacer need only have "at least one component" that is "compressible." (*Id.* at 107:5–7). The claims explicitly describe "a longitudinally compressible spacer," meaning that the spacer as a whole must be "capable of being made more compact along its length." Synthes attempts to change the plain meaning of the term by construing it in a way that makes only "at least one component" of the spacer "longitudinally compressible." Synthes's proposed construction goes against the plain meaning of the claim language, and is not supported by the specification. Therefore, I adopt Globus's proposed construction, but replace the word "component" with "spacer."[1]

    4.    "the spacer metallic portion"

        a.    *Plaintiff's proposed construction*: The portion of the longitudinally compressible spacer that is metallic, as introduced above in this subparagraph of the claim.

        b.    *Defendant's proposed construction*: Indefinite.

        c.    *Court's construction*: The metallic, rigid portion of the longitudinally compressible spacer.

The term "the spacer metallic portion" has a clear antecedent basis in "a metallic, rigid portion," which is referenced earlier in the claim subparagraph. (D.I. 1-1 at 37:1). Synthes highlights that claim 1 uses a similar term to refer to the elastomeric portions of the spacer as the "first and second elastomeric spacer portions." (*Id.* at 69, 37:33). The inventors used the term "the spacer metallic portion" to differentiate the term from the first and second "metallic rigid

---

[1] I have no reason to believe that persons of ordinary skill in the art will disagree over what a spacer is. In any event, identifying it as a "component" seems to alter it by giving it a broader meaning than it actually has.

8

portions" that appear earlier in claim 1, but are not a part of the "longitudinally compressible spacer." Claim 1 refers to the first and second "metallic rigid portions" as "the first rigid portion" and "the second rigid portion." Thus, there is no confusion as to the antecedent basis for "the spacer metallic portion." Therefore, this term is sufficiently definite, and while Synthes's proposed construction is not wrong, I think it is unnecessarily complicated, and thus have construed the term more simply.

5. "the spacer rigid portion"

    a. *Plaintiff's proposed construction*: The portion of the longitudinally compressible spacer that is rigid, as introduced above in this subparagraph of the claim.

    b. *Defendant's proposed construction*: Indefinite.

    c. *Court's construction*: The rigid portion of the longitudinally compressible spacer.

The term "the spacer rigid portion" has a clear antecedent basis in "a rigid portion." (*Id.* at 70, 39:41). The term "the spacer rigid portion" is used to distinguish the term from the rigid portions that are not a part of the spacer. Thus, this term is sufficiently definite. Therefore, while Synthes's proposed construction is not wrong, I think it is unnecessarily complicated, and thus have construed the term more simply.

6. "an inner bore extending the length"

    a. *Plaintiff's proposed construction*: A through-hole spanning the length [of the given component].

    b. *Defendant's proposed construction*: A through-hole of continuous diameter spanning the length of the given component.

9

        c.    *Court's construction*: A through-hole spanning the length of the given component.

The parties agree that an "inner bore" constitutes a "through-hole," and that "extending the length" means "spanning the length of the given component." The only dispute is whether the "through-hole" must be one of "continuous diameter." By "continuous," Globus means "equal [throughout]." Globus's proposed construction adds a limitation that is not supported by the claims or the specification. The fact that a figure of the '057 patent appears to depict the "inner bore" with a "continuous" diameter is not enough to import such a limitation into the claims. Therefore, I adopt Synthes's proposed construction.

    7.    "a distal portion"

        a.    *Plaintiff's proposed construction*: A part of the bone coupling assembly located farther from the surgeon than the proximal portion when the surgeon is implanting the device.

        b.    *Defendant's proposed construction*: A part of the bone coupling assembly located farther from the center of the patient's body than the proximal portion.

        c.    *Court's construction*: A part of the bone coupling assembly located farther from the surgeon than the proximal portion when the surgeon is implanting the device.

The parties agree that "a distal portion" is "a part of the bone coupling assembly" that is "farther from" a particular point of reference "than the proximal portion." The point of disagreement is whether the point of reference should be "the surgeon" or "the center of the patient's body." The term "a distal portion" does not appear in the specification. Globus relies on the 2000 edition of *Stedman's Medical Dictionary*, which defines "distal" as "[s]ituated away from the center of the body, or from the point of origin." (D.I. 53-11 at 5). When a surgeon puts

10

a device into a human body, the surgeon is the point of origin. In any event, whatever the usual meaning and usage of "distal," claim 33 makes clear that the inventors used it so that it refers to the portion of the "bone coupling assembly" that couples to the bone, and that the "proximal" portion is farther from the bone. Synthes's proposed construction makes clear that "a distal portion" is "farther from the surgeon" when the device is being implanted. In the context of the patent, this is certainly correct. Therefore, I adopt Synthes's proposed construction.

8. "a proximal portion"

a. *Plaintiff's proposed construction*: A part of the bone coupling assembly located closer to the surgeon than the distal portion when the surgeon is implanting the device.

b. *Defendant's proposed construction*: A part of the bone coupling assembly located closer to the center of the patient's body than the distal portion.

c. *Court's construction*: A part of the bone coupling assembly located closer to the surgeon than the distal portion when the surgeon is implanting the device.

The parties agree that "a proximal portion" is "a part of the bone coupling assembly" that is "closer to" a particular point of reference "than the distal portion." The parties, again, disagree as to what that point of reference should be. The term "a proximal portion" does not appear in the specification. The 2000 edition of *Stedman's Medical Dictionary* defines "proximal" as "[n]earest the trunk or the point of origin." (*Id.* at 6). Again, when a surgeon puts a device into a human body, the surgeon is the point of origin. As noted above, claim 33 makes clear that "proximal" refers to the portion of the "bone coupling assembly" that is farther from the bone than the "distal portion." Synthes's proposed construction is consistent with the language in claim 33. Therefore, I adopt Synthes's proposed construction.

11

## V.   CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.